No. 16-13404

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————

KATHLEEN N. PEDRO, on behalf of herself
and all others similarly situated,

*Plaintiff-Appellant*,

v.

TRANSUNION LLC,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Georgia, Atlanta Division,
Case No. 1:15-cv-03735

## APPELLANT'S REPLY BRIEF

Kenneth S. Canfield
DOFFERMYERE SHIELD
 CANFIELD & KNOWLES, LLC
1355 Peachtree Street NE, Ste. 1900
Atlanta, GA 30309

Kenneth S. Byrd
Andrew R. Kaufman
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
150 Fourth Avenue North, Ste. 1650
Nashville, TN 37219

Jonathan D. Selbin
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
(212) 355-9500
jselbin@lchb.com

*Attorneys for Plaintiff-Appellant*
(additional counsel listed on signature page)

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, undersigned counsel for Plaintiff-Appellant certify that the following attorneys, persons, associations of persons, firms, partnerships, corporations or governmental entities have an interest in the outcome of this case:

1.    Balser, David (Counsel for former Defendant-Appellee Equifax, Inc.)

2.    Barfield, Alex M. (Counsel for Defendant-Appellee TransUnion, LLC)

3.    Barrett, Julia C. (Counsel for Defendant-Appellee Equifax, Inc.)

4.    Boyle, Jr., Michael J. (Counsel for Plaintiff-Appellant)

5.    Byrd, Kenneth S. (Counsel for Plaintiff-Appellant)

6.    Canfield, Kenneth S. (Counsel for Plaintiff-Appellant)

7.    Equifax, Inc.  (EFX) (former Defendant-Appellee)  [No parent corporation or other corporation owns more than 10 percent of Equifax, Inc.'s stock.]

8.    Equifax Information Services LLC [A wholly-owned subsidiary of Equifax, Inc.]

9.    Francis, James A. (Counsel for Plaintiff-Appellant)

1328691.3

*Kathleen Pedro v. EFX, et al.,* Case No. 16-13404

10.    Frontino, Brian C. (Counsel for Defendant-Appellee TransUnion, LLC)

11.    Kaufman, Andrew R. (Counsel for Plaintiff-Appellant)

12.    McEntyre, Zachary A. (former Counsel for Defendant-Appellee Equifax, Inc.)

13.    Newman, Stephen J. (Counsel for Defendant-Appellee TransUnion, LLC)

14.    Pedro, Kathleen (Plaintiff-Appellant)

15.    Selbin, Jonathan D. (Counsel for Plaintiff-Appellant)

16.    Semnar, Babak (Counsel for Plaintiff-Appellant)

17.    Taormina, Alisa M. (Counsel for Defendant-Appellee TransUnion, LLC)

18.    Thrash, Jr., Thomas W. (District Court Judge)

19.    Toro, John C. (Counsel for former Defendant-Appellee Equifax, Inc.)

20.    TransUnion, LLC (Defendant-Appellee)  [TransUnion LLC is wholly-owned by TransUnion Intermediate Holdings, Inc.  TransUnion Intermediate Holdings, Inc. is wholly-owned by TransUnion, a publicly-traded company with the ticker symbol TRU.  Advent International Corp. and GS Capital Partners, an affiliate of Goldman

1328691.3

*Kathleen Pedro v. EFX, et al.,* Case No. 16-13404

Sachs Group, Inc., a publicly-traded entity with the ticker symbol GS,

together own a majority of the stock in TransUnion.  GS Capital

Partners owns more than 10 percent of TransUnion's stock.]

21.    Wilson, Matthew R. (Counsel for Plaintiff-Appellant)

No associations of persons, and no other firms, partnerships, or corporations

have an interest in the outcome of this case or appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...........................................................C-1

INTRODUCTION ...................................................................................1

SUMMARY OF REPLY ..........................................................................2

ARGUMENT ..........................................................................................5

I.    THE DISTRICT COURT ERRED BY DISMISSING THE COMPLAINT ON WILLFULNESS GROUNDS. ............................5

    A.    The *Safeco* safe harbor does not exempt TransUnion from willfulness liability. ...........................................5

        1.    *Safeco* does not require binding legal authority unless the statute is ambiguous. ......................................5

            a.    TransUnion's position requires this Court to ignore its own precedent. .....................................6

            b.    TransUnion's position requires this Court to create a circuit split. .............................................8

        2.    Section 1681e(b) has a plain and ascertainable meaning: credit reports do not meet the standard of "maximum possible accuracy" where they are misleading or incomplete. ..............................................10

        3.    Federal Reserve commentary directed at a different actor does not immunize TransUnion from willfulness liability, nor does an informal "Ask CFPB" webpage. ............................................12

    B.    Courts must interpret the statute before determining whether a willful violation is alleged or proved. .....................16

    C.    Whether TransUnion acted recklessly in this case is a question of fact not resolvable on a motion to dismiss. ...........18

II.    ALTERNATIVELY, PEDRO ALLEGED KNOWING VIOLATIONS OF THE FCRA. .......................................21

III.    PEDRO HAS ARTICLE III STANDING. .......................................23

CONCLUSION .....................................................................................26

CERTIFICATES

1328691.3

## TABLE OF CITATIONS

**Page**

## CASES

*Allen v. Wright,*
468 U.S. 737 (1984) .........................................................................24

*Barnhart v. Sigmon Coal Co., Inc.,*
534 U.S. 438 (2002) .........................................................................12

*Cortez v. Trans Union, LLC,*
617 F.3d 688 (3d Cir. 2010) ..................................................... passim

*Cushman v. Trans Union Corp.,*
115 F.3d 220 (3d Cir. 1997)...........................................................21

*Dickens v. Trans Union Corp.,*
18 F. App'x 315 (6th Cir. 2001) .....................................................10

*Dreher v. Experian Info. Sols., Inc.,*
71 F. Supp. 3d 572 (E.D. Va. 2014) .................................................9

*Follman v. Hospitality Plus of Carpentersville, Inc.,*
532 F. Supp. 2d 960 (N.D. Ill. 2007) ................................................9

*Fuges v. Sw. Fin. Servs., Ltd.,*
707 F.3d 241 (3d Cir. 2012)........................................................ 8, 19

*Hinkle v. Midland Credit Mgmt., Inc.,*
827 F.3d 1295 (11th Cir. 2016) ................................................. passim

*Johnson v. City of Shelby, Miss.,*
135 S. Ct. 346 (2014) ......................................................................23

*Jones v. Federated Fin. Reserve Corp.,*
144 F.3d 961 (6th Cir. 1998)...........................................................12

*Kelliher v. Veneman,*
313 F.3d 1270 (11th Cir. 2002) ......................................................23

*Koropoulos v. Credit Bureau, Inc.,*
734 F.2d 37 (D.C. Cir. 1984) ..........................................................11

ii

**TABLE OF CITATIONS**
(continued)

**Page**

*Larson v. Trans Union, LLC*,
  No. 12-05726, 2016 WL 4367253 (N.D. Cal. Aug. 11, 2016), *appeal filed*,
  No. 16-80111 (9th Cir.)......................................................................25

*Levine v. World Fin. Network Nat'l Bank*,
  437 F.3d 1118 (11th Cir. 2006) ...........................................................8

*Levine v. World Fin. Network Nat'l Bank*,
  554 F.3d 1314 (11th Cir. 2009) ..................................................... 7, 16

*Long v. Tommy Hilfiger U.S.A., Inc.*,
  671 F.3d 371 (3d Cir. 2012)........................................................... 8, 16

*Milbourne v. JRK Residential Am., LLC*,
  No. 12-861, 2016 WL 4265741 (E.D. Va. Aug. 11, 2016) ...................9

*Murray v. New Cingular Wireless Servs., Inc.*,
  523 F.3d 719 (7th Cir. 2008)................................................................8

*Patel v. Trans Union, LLC*,
  No. 14-00522, 2016 WL 6143191 (N.D. Cal. Oct. 21, 2016) ............25

*Price v. Trans Union, LLC*,
  737 F. Supp. 2d 281 (E.D. Pa. 2010) .................................................19

*Ramirez v. Trans Union, LLC*,
  No. 12-00632, 2016 WL 6070490 (N.D. Cal. Oct. 17, 2016) ............25

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007) .................................................................... passim

*Seamans v. Temple Univ.*,
  744 F.3d 853 (3d Cir. 2014) ..................................................... passim

*Spokeo v. Robins*,
  136 S. Ct. 1540 (2016) ......................................................... 23, 24, 25

*United States v. Crape*,
  603 F.3d 1237 (11th Cir. 2010) .........................................................11

## TABLE OF CITATIONS
(continued)

**Page**

*United States v. Richardson*,
  418 U.S. 166 (1974) ............................................................................25

*Westra v. Credit Control of Pinellas*,
  409 F.3d 825 (7th Cir. 2005)..............................................................14

*Yee v. City of Escondido*,
  503 U.S. 519 (1992) ............................................................................23

### STATUTES

15 U.S.C. § 1681(b) .................................................................................11

15 U.S.C. § 1681e(b) ........................................................................ passim

15 U.S.C. § 1681s-2(a) ............................................................................13

15 U.S.C. § 1681s-2(b) .........................................................................6, 7

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ...............................1

### REGULATIONS

12 C.F.R. pt. 1002, Supp. I, comment 1002.10(2)..................................13

**INTRODUCTION**

Ms. Pedro's claim in this case is simple: TransUnion published credit reports that wrongfully labeled her as a deadbeat. Her complaint, which must be given credence at this stage, asserts that TransUnion reported her parents' delinquent credit account in a way that reflected negatively (and inaccurately) on Ms. Pedro's creditworthiness and on her credit scores even though she was only an authorized user of the account in question and had no responsibility for the debt. That claim invokes a straightforward statutory provision found in the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"): the requirement that TransUnion "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Pedro alleges that TransUnion's violations of the FCRA were willful because they were the result of a common policy and practice, and because TransUnion was on notice of the problem due to thousands of lodged consumer disputes. On these allegations, and applying controlling law, the District Court plainly erred in dismissing Ms. Pedro's complaint as a matter of law.

Perhaps recognizing the logic of that conclusion, TransUnion and its amicus swing for the fences, and ask this Court to construct an entirely new and breathtakingly broad rule to protect credit agencies from having to comply with the FCRA. In doing so, they invite this Court to overrule its own authority in *Hinkle v.*

*Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016), and to needlessly create a circuit split by adopting a rule directly contrary to that enunciated by the Third Circuit in *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010) and *Seamans v. Temple Univ.*, 744 F.3d 853 (3d Cir. 2014). Those cases hold that, unless a provision of the FCRA is ambiguous, a plaintiff properly alleges—and can prove—a willfulness claim under the FCRA without identifying a specific binding regulation or appellate decision with similar facts that put the defendant on notice it was violating the statute. While true that under *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) , the lack of definitive guidance can in certain circumstances grant defendants a safe harbor from willfulness liability as a matter of law, that safe harbor comes into play *only* where the statute is genuinely unclear or ambiguous. Where, as here, the statute has a plain and ascertainable meaning, a willfulness claim can proceed. The decision of the District Court to the contrary should be reversed.

## SUMMARY OF REPLY

TransUnion's arguments in support of the District Court's dismissal of Pedro's complaint are unconvincing. *First*, Pedro is not required to point to binding regulatory or appellate authority that would have warned TransUnion that reporting authorized-user information in a misleading way was a violation of the FCRA. This Court and the Third Circuit have both held that *Safeco* provides a

safe harbor as a matter of law *only* where the statute is genuinely ambiguous after applying ordinary tools of statutory interpretation.  That rule is also supported by well-reasoned district court decisions.

*Second*, the relevant provision here, § 1681e(b), has a plain and ascertainable meaning: it is implicated where credit reports are materially misleading or incomplete.  The overwhelming majority of courts, including every published court of appeals decision to date, has adopted that interpretation.  It is the only interpretation that accords with the plain text, statutory purpose, and common sense.

*Third*, obscure and dated Federal Reserve guidance directed at credit information furnishers does not immunize TransUnion from willfulness liability.  Credit furnishers and consumer reporting agencies are different actors with different obligations under the statute.  Similar arguments were rejected by this Court in *Hinkle* and the Third Circuit in *Seamans*.

*Fourth*, at minimum, the District Court erred by dismissing the complaint on willfulness grounds without first engaging in the required interpretation of § 1681e(b).  The *Safeco* "objectively reasonable reading" defense applies only where the statute is ambiguous, so a complaint cannot be dismissed on that ground without a conclusion that the statute is in fact susceptible to multiple interpretations.  And as a matter of good practice, courts will find it difficult to

adjudicate FCRA claims (whether brought under negligence or willfulness theories) without an understanding of the scope of the statutory duty at issue. At minimum, that is a legal inquiry based upon the text of the statute, subject to ordinary principles of statutory interpretation. When the claim requires application of a standard to set of facts, determining the scope of that duty will itself often be a fact question, as this Court recognized in *Hinkle*.

*Fifth*, the District Court erred because Pedro's complaint plausibly alleged knowing violations of the FCRA. The complaint alleges that TransUnion adopted and maintained a policy of reporting authorized-user information in ways that attributed delinquent debts to consumers who were not responsible for the debts in question. TransUnion did this in violation of a clearly established standard requiring "maximum possible accuracy," and was on notice of the problem due to thousands of consumer complaints. That is enough to raise a plausible allegation that TransUnion knew it was violating the FCRA.

Finally, this Court should reject TransUnion's halfhearted challenge to Pedro's Article III standing, an issue not raised below. Pedro alleges an inaccurate credit report that misrepresented her financial history, in effect labeling her a deadbeat. That injury is both particularized and concrete and easily sufficient for Article III standing.

## ARGUMENT

## I.    THE DISTRICT COURT ERRED BY DISMISSING THE COMPLAINT ON WILLFULNESS GROUNDS.

The entire gist of TransUnion's argument is that it is immunized from willfulness liability because no court of appeals has ever decided this precise issue. That is both legally unsound—it runs contrary to decisions by this Court and the Third Circuit—and logically flawed—because it means that a practice cannot be found to violate the statute until it has it been found to violate the statute.

### A.    The *Safeco* safe harbor does not exempt TransUnion from willfulness liability.

#### 1.    *Safeco* does not require binding legal authority unless the statute is ambiguous.

TransUnion argues for an overbroad interpretation of *Safeco*, one that has been rejected by both this Court in *Hinkle* and the Third Circuit in *Cortez* and *Seamans*. Those decisions make clear that the absence of binding legal authority "that specifically addresses the allegedly wrongful conduct," Appellee's Br. at 10, does *not* grant consumer reporting agencies a "free bite at the apple" in the face of a statute with a plain and ascertainable meaning. That is so even where the appellate court has had no occasion to interpret the statute before, where the provision sets out a standard with applications that will vary on the facts of the case, and where the defendant points to some authority supporting its actions.

### a.    TransUnion's position requires this Court to ignore its own precedent.

In *Hinkle*, this Court considered a claim that a credit information furnisher violated a provision of the FCRA requiring furnishers to "conduct an investigation with respect to . . . disputed information." 827 F.3d at 1301 (quoting 15 U.S.C. § 1681s-2(b)). This Court reversed summary judgment and permitted a willfulness claim to go a jury even though the interpretation of the provision at issue was "an issue of first impression" in this Circuit, the Court determined that the application of the standard at issue would "vary depending on the circumstances of the case," and the defendant cited appellate authority in support of its actions. *Id.* at 1301-07.

Faced with *Hinkle*, TransUnion argues that it was not *really* a *Safeco* decision, and that the Court did "***not*** apply *Safeco*'s rule regarding statutory interpretation[.]" Appellee's Br. at 23 (emphasis in original). Nonsense. First, *Hinkle* cited *Safeco* and there is no basis for the assertion that a panel of this Court simply ignored on-point, binding Supreme Court precedent. Second, *Hinkle* did *exactly* what the first step of *Safeco* requires and what Pedro urges this Court to do: interpret the statute before determining whether the defendant—as a matter of law—did not violate it willfully. *See Hinkle*, 827 F.3d at 1301-04 (analyzing the "plain text," structure, and purpose of the statute).

TransUnion next tries to minimize the import of *Hinkle* by trying to characterize is as one of a set of "exceptionally rare cases," without explaining

what makes *Hinkle* so exceptionally rare.  To the contrary, *Hinkle* is an ordinary

application of *Safeco*, just like this case.  TransUnion says that *Hinkle*'s adoption

of a "reasonableness" interpretation of § 1681s-2(b) "followed prior decisions"

from other circuits.  Appellee's Br. at 23.  But that is all that Pedro asks of the

Court here: to follow the plain text of the statute and every published circuit

decision interpreting § 1681e(b) and hold that "maximum possible accuracy"

requires that credit reports avoid materially misleading statements or omissions.

TransUnion's attempt to distinguish *Hinkle* on this basis is an implicit

acknowledgement that its theory—that binding legal authority as to the specific

facts of the case is *always* required for willfulness liability—holds no water.

This Court's decision in *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d

1314 (11th Cir. 2009) (*Levine II*), is consistent with *Hinkle*.  There the Court

affirmed summary judgment against willfulness claims only *after* finding an actual

ambiguity in the statute: whether the term "account" encompasses closed accounts.

*Id.* at 1318-19.  In a prior opinion in which it reversed the district court's dismissal

of the same willfulness claims, this Court described the relevant language as

"ambiguous," noted that the only court of appeals decision on point favored the

defendant's position, and that the plaintiff's position was based on interpreting the

term "account" differently between two provisions so as to avoid making one

superfluous.  *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1122 (11th

Cir. 2006) (*Levine I*).[1]

### b. TransUnion's position requires this Court to create a circuit split.

In *Cortez*, the Third Circuit affirmed a jury verdict finding that TransUnion committed willful violations of the FCRA and awarding punitive damages.  617 F.3d at 721-22.  TransUnion argued there, as it does here, that it could not be liable for a willful violation because no court of appeals had addressed whether the conduct at issue violated the FCRA.  *Id.* at 722.  The Third Circuit firmly disagreed:  "This does not, however, result in a borderline case of liability as TransUnion suggests.  It merely establishes that the issue has not been presented to a court of appeals before.  The credit agency whose conduct is first examined under [the FCRA] should not receive a pass because the issue has never been decided."  *Id.*  The Third Circuit reiterated this point in *Seamans*, explaining that "[a] dearth of authoritative guidance makes it less likely that a party's conduct was objectively unreasonable, but the absence of such authority does not immunize an

---

[1] Courts found similar ambiguities in *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 252-54 (3d Cir. 2012), in which the court found ambiguous the terms "consumer reporting agency" and "consumer report," throwing into doubt whether the FCRA even applied to the defendant; *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 375-78 (3d Cir. 2012), in which the court found it ambiguous whether the term "expiration date" referred only to a series of numbers recognizable as an expiration date (a month and a year), and not to any subset of those numbers (for example, the month with the year redacted); and *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 724-27 (7th Cir. 2008), in which the court found it unclear whether a requirement of "clear and conspicuous" disclosure was satisfied by six-point font.

actor from potential liability where the statute is far too clear to support the actor's interpretation." 744 F.3d at 868 (internal quotation marks omitted).

Several district courts have agreed with this Court and the Third Circuit in well-reasoned decisions. *See Milbourne v. JRK Residential Am., LLC*, No. 12-861, 2016 WL 4265741, at *8-9 (E.D. Va. Aug. 11, 2016) (denying summary judgment on willfulness claims, even though there were no appellate decisions construing the provision at issue and district courts had reached differing conclusions, and explaining that "a lack of judicial or administrative guidance cannot salvage an objectively unreasonable interpretation where the statutory text is clear"); *Dreher v. Experian Info. Sols., Inc.*, 71 F. Supp. 3d 572, 580-81 (E.D. Va. 2014) (same, explaining that "the fact that the FTC and appeals courts have not tackled [the provision at issue] does not necessarily inject ambiguity as to its meaning"); *Follman v. Hospitality Plus of Carpentersville, Inc.*, 532 F. Supp. 2d 960, 964 (N.D. Ill. 2007) (denying motion to dismiss willfulness claims, and explaining that where "the text of [the] statute is clear and open to only one reasonable interpretation . . . a dearth of guidance does not render [a] defendant's readings plausible").

Put differently: the fact that no court of appeals previously found this precise practice to violate the FCRA may be relevant to the ultimate determination by the factfinder as to whether or not TransUnion's conduct was reasonable; it does not,

as TransUnion argues, somehow immunize it from liability as a matter of law.

> **2.** **Section 1681e(b) has a plain and ascertainable meaning: credit reports do not meet the standard of "maximum possible accuracy" where they are misleading or incomplete.**

As Ms. Pedro explained in her opening brief, § 1681e(b)'s requirement of "maximum possible accuracy" is implicated where a credit report contains materially misleading or incomplete information.  Appellant's Br. at 15-19.  That conclusion is the only one consistent with the plain text of the statute, the FCRA's broad remedial purpose, and common sense.  *Id.*  That is why the overwhelming majority of courts—including every published court of appeals decision to date— reject the cramped "technical accuracy" construction of § 1681e(b).

TransUnion barely disputes these arguments, but instead points to a few scattered district court decisions, cases that largely rely on the unpublished *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001).  As Appellant's opening brief explained, *Dickens* relied solely on a misreading of other cases, and the interpretation of the statute did not seem to be outcome-determinative in any event.  Appellant's Br. at 17 n.3.

Amicus the Consumer Data Industry Association ("CDIA") attempts a robust defense of the "technical accuracy" approach, but is wrong at every step.  CDIA argues that the "technical accuracy" approach "has the virtue of fidelity to the statutory text," but gets there only by emphasizing the word "accuracy" and

writing "maximum possible" out of the statute.  CDIA Br. at 25.  That is not how statutory interpretation works.  *See Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984) ("Congress did not limit the Act's mandate to reasonable procedures to assure only technical accuracy; to the contrary, the Act requires reasonable procedures to assure 'maximum accuracy.'").

CDIA next says that the technical accuracy approach "best serves the statutory purpose."  CDIA Br. at 25.  But statutory purpose does not override plain text.  *See, e.g.*, *United States v. Crape*, 603 F.3d 1237, 1245-46 (11th Cir. 2010).  Even if it could, the purpose of the FCRA is best served by the interpretation demanded by the plain text of the statute and endorsed by the consensus judicial view.

The FCRA mandates that consumer reporting agencies "adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization" of consumer credit information.  15 U.S.C. § 1681(b).  CDIA emphasizes the words "reasonable procedures," ignoring the remainder of the expressed statutory purpose.  CDIA Br. at 25.  But consumer "reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports."  *Koropoulos*, 734 F.2d at 40; *see also Cortez*, 617

F.3d at 709 (noting the distinction between "reporting that a person was 'involved' in a credit card scam and reporting that the consumer 'was in fact one of the victims of the scam'") (citation omitted).

CDIA argues that a "technical accuracy" approach "best captures the balance Congress struck," CDIA Br. at 26, but ignores that Congress "struck" that balance by writing the FCRA to require only "reasonable procedures to assure maximum possible accuracy," not maximum possible accuracy at all costs. *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461-62 (2002) ("We have stated time and again that courts must presume that a legislature says in statute what it means and means in a statute what it says there.").

Moreover, even if there were some ambiguity in the plain text, the FCRA is a remedial statute that "is to be liberally construed in favor of the consumer[.]" *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964 (6th Cir. 1998); *see also Cortez*, 617 F.3d at 722 (affirming jury finding of willfulness, in part because the FCRA "is undeniably a remedial statute that is to be read in a liberal manner"); *Seamans*, 744 F.3d at 868 (same).

> **3.    Federal Reserve commentary directed at a different actor does not immunize TransUnion from willfulness liability, nor does an informal "Ask CFPB" webpage.**

TransUnion relies heavily on decades-old staff commentary giving credit information furnishers the "option to designate . . . all accounts with an authorized

user . . . to reflect the participation of both parties."  12 C.F.R. pt. 1002, Supp. I,

comment 1002.10(2).  But TransUnion ignores the critical fact that this guidance is

directed at credit information furnishers, not consumer reporting agencies, and so

says nothing about the scope of *TransUnion's* duties under § 1681e(b).

Pedro's complaint takes no issue with credit information furnishers reporting

authorized-user information to TransUnion.  The problem is that TransUnion

maintains policies that publish that information in ways that make Pedro look like

a deadbeat who doesn't pay her debts.  Guidance directed at furnishers says

nothing one way or the other as to TransUnion's obligations under § 1681e(b).

Nor would it make any sense for the same rules to apply to different actors

playing very different roles in the credit reporting system.  Creditors operate in a

world of limited information about consumers because their knowledge is typically

limited to transactions involving the creditor.  The FCRA recognizes that fact and

does not impose upon creditors a freestanding obligation to maintain accurate

information.  Rather, a creditor is only obligated to avoid furnishing information if

it "knows or has reasonable cause to believe that the information is inaccurate" or

if the consumer notifies that creditor that "the information is, in fact, inaccurate."

15 U.S.C. § 1681s-2(a).

By contrast, and by design, consumer reporting agencies, particularly the

"big three" that include TransUnion, are different.  These are professional data

brokers privy to a universe of information about (as amicus CDIA states, at 7 n.2) more than 200 million adults.  They are in position to understand on a large scale the landscape of consumer credit information, and to control how that information is reported.  Commensurate with that unique power, the FCRA imposes a higher obligation to ensure those reports are accurate: the duty to "follow reasonable procedures to assure maximum possible accuracy[.]"  15 U.S.C. § 1681e(b).  To pretend that guidance directed at creditors has anything to do with consumer reporting agencies is to ignore the dramatically different ways that different actors are treated under the statute.

*Hinkle* and *Seamans* permitted willfulness claims to go to a jury where defendants made arguments similar to the one TransUnion makes here.  In *Hinkle*, the credit information furnisher argued that it had conducted a sufficient investigation because a Seventh Circuit case had found no violation on similar facts.  827 F.3d at 1305-06 (discussing *Westra v. Credit Control of Pinellas*, 409 F.3d 825 (7th Cir. 2005)).  This Court was unconvinced, explaining that the defendant in *Westra* was a collection agency in direct relationship with the original creditor, not a "down-the-line" buyer like the defendant.  *Id.*  Because the two actors were differently situated, the FCRA placed different obligations on each, and the *Hinkle* defendant could not avoid willfulness liability by pointing to a case involving a different kind of actor.  The facts here present an easier case than

*Hinkle*,  for there the defendant furnisher at least invoked authority directed at other furnishers.

*Seamans* is even more on point.  There, the plaintiff alleged that the defendant, a credit information furnisher, violated the FCRA by reporting a delinquent federal student loan without reporting the date of delinquency, preventing the debt from "aging off" of the consumer's credit reports after seven years.  744 F.3d at 857-59.   The furnisher conceded that, for most debts, its actions would plainly violate the statute.  But, making the mirror image of the argument TransUnion makes here, the furnisher pointed to a different statute that permitted consumer reporting agencies to exempt delinquent student loans from the "aging off" process, and to instead report the delinquency until the debt was paid in full. *Id.* at 861.  Therefore, the defendant argued, because the reporting agencies were permitted to report the delinquent student debt, furnishers were permitted to do the same.  The Third Circuit disagreed and reversed summary judgment, noting that "[t]he text does not mention furnishers . . . [and] the question of whether a particular loan should or should not 'age off' a credit report must be answered by the CRAs, and not by furnishers[.]" *Id.* at 862.   Just so here.  The Federal Reserve guidance "does not mention" consumer reporting agencies like TransUnion and the question of whether and how authorized user information appears on credit reports "must be answered by the CRAs, and not by furnishers."

Little need be said about the "Ask CFPB" website invoked in passing by TransUnion and more extensively by CDIA. Appellee's Br. at 27-18; CDIA Br. at 11-12. TransUnion cites cases in which, after finding a provision of the FCRA ambiguous, courts held that informal agency guidance did not rescue a willfulness claim. *See Safeco*, 551 U.S. at 70 n.19 (FTC staff letter); *Levine II*, 554 F.3d at 1319 (two FTC staff letters); *Long*, 671 F.3d at 377 n.3 (FTC "Business Alert"). That goes both ways. Just as informal agency guidance does not add clarity to an ambiguous statute, it does not muddy the waters of a clear statute. Put simply: the government does not regulate through "ask me" pages.

### B. Courts must interpret the statute before determining whether a willful violation is alleged or proved.

TransUnion tries to distinguish *Cortez* on the basis that it was a case where the statute was "far too clear" for *Safeco* to preclude willfulness liability. Appellee's Br. at 24. But that only begs the question—what does the statute mean? The *Safeco* "objectively reasonable reading" defense applies only where the statute is ambiguous, so a complaint cannot be dismissed on that ground without a conclusion that the statute is susceptible to multiple interpretations. And in all but extreme cases, it is difficult to determine whether a defendant might be liable for a negligent or willful violation without first identifying the contours of the duty allegedly violated. At minimum, that is a legal inquiry based upon the text of the statute, subject to ordinary principles of statutory interpretation. When

the claim requires application of a standard to a set of facts, determining the scope of that duty will itself often be a fact question. *See Hinkle*, 827 F.3d at 1302 (permitting willfulness claim to go to a jury, and explaining that "what constitutes a 'reasonable investigation' will vary depending on the circumstances of the case"). Putting the cart before the horse and jumping straight to the willfulness analysis is also bad practice because if courts consistently decline to interpret the statute, regulated parties will have little incentive to conform their conduct to the law, and consumers will lose the benefits of the statute's protections.

As explained in her opening brief, Pedro plausibly alleged violations of § 1681e(b), regardless of the standard applied. Appellant's Br. at 20-22. But in general, it is hard to measure whether a violation of § 1681e(b) is negligent or willful without interpreting the text. If, contrary to what every other published circuit decision has held, "maximum possible accuracy" means only the low threshold of "technical accuracy," then it is less likely that a violation will be willful, and more likely it will be negligent. If, on the other hand, the higher standard applies, that changes the degree to which a practice deviates from the standard of conduct, and therefore whether it is objectively reckless.

Under TransUnion's overbroad reading of *Safeco*, the failure to interpret the statute would preclude willfulness claims, as courts would rarely issue the types of definitive, binding rulings that TransUnion says is required. It would also hinder

negligence claims, because without an understanding of what the statute means, courts will be unable to determine whether a violation rises to the level of negligence, or how negligent a violation it is.

As Ms. Pedro explained in her opening brief, that is why courts generally do the work of interpreting the statute, whether or not a willfulness claim ultimately can proceed.  Appellant's Br. at 31-32.  TransUnion claims that *Safeco* itself was different, but that is simply not true.  *Safeco* interpreted the statute before determining that the plaintiff could not prove a willful violation.  *Compare Safeco*, 551 U.S. at 60 (addressing "the antecedent question of whether either company violated the [FCRA] at all"), *with id.* at 73 (Thomas, J., concurring) (arguing that the Court should have declined to "resolve[] the merits of Safeco's interpretation").  True, the Court declined to resolve the case-specific, fact-bound question of whether the violation resulted in the plaintiff receiving a different insurance rate, but that is not the same as declining to interpret the statute.  The first is an issue of fact for the factfinder; the latter is a question of law for the court, and a necessarily threshold one at that.

### C.    Whether TransUnion acted recklessly in this case is a question of fact not resolvable on a motion to dismiss.

Where the *Safeco* safe harbor does not apply, willfulness is typically a question of fact, often for the jury.  *See* Appellant's Br. at 33-35.  That is so because willfulness requires inquiry into the defendant's acts or polices and

whether those acts or policies deviated sufficiently far from the defendant's statutory duties such that "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69; *see also Seamans*, 744 F.3d at 868 ("A furnisher's objectively unreasonable actions with respect to a particular consumer's account can support a jury finding of willfulness.  Blanket policies, two, can underpin such a finding.").

The factual questions in this case are not, as TransUnion says, limited to TransUnion's "subjective intent."  Appellee's Br. at 28.  Determining whether TransUnion's alleged violations of the FCRA were *objectively* reckless requires resolution of questions of fact.  *See Fuges*, 707 F.3d at 251 n.16 ("After *Safeco*, a jury may be called on to determine whether violations of FCRA were willful or negligent, based on the facts surrounding defendants' adoption of a particular reading of a statute."); *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281, 289 (E.D. Pa. 2010) ("Whether the Defendant's conduct violates this objective standard is a fact-bound inquiry that should be answered by a jury.").

For example, how did TransUnion report authorized-user information to creditors?  Did it report *all* authorized-user information, including corporate authorized users, or did it treat different authorized users differently, undercutting its stated position that reporting authorized-user information is always reasonable? How did it respond to the thousands of consumer complaints that the complaint

alleges it has received on this issue?  Did it remove the inaccurate information, thus demonstrating that its policy was unreasonable from the start?  Did it ignore the complaints, thus demonstrating that it maintained its policy in an objectively unreasonable way?  These questions all aim at objective facts, the very facts to which the complaint plausibly points as ultimately resulting in liability.

TransUnion engages in speculation, both about Pedro and authorized users generally, that only underscores why this case should not have been dismissed. For example, TransUnion says the fact that "some scoring models consider . . . the presence of a derogatory authorized user account may reflect the true fact that . . . the authorized user sometimes can be held responsible for the use of the account[.]"  Appellee's Br. at 21.  Maybe so, maybe not.  How and why "scoring models," including TransUnion's *own* scoring model, account for authorized-user information based on the way TransUnion reports it are questions of fact relevant to whether the inaccuracy on Pedro's reports resulted from willful noncompliance with the statute.

Amicus CDIA further demonstrates why discovery is necessary.  CDIA attaches to its brief a document, unauthenticated and not part of the record, purportedly excerpts of CDIA's own "Credit Reporting Resource Guide."  CDIA Br. at 15.  CDIA says that this document shows that "it is well-understood by the users of consumer reports that an authorized user is not liable for the account

balance." *Id.* at 28, A-2-A3.  Even putting aside all of the problems with a self-serving, self-produced, and outside-the-record submission on an appeal of a motion to dismiss, CDIA's exhibit shows no such thing.  It tells *furnishers* how to report information, which shows only that "it is well-understood" *by TransUnion* that "an authorized user is not liable for the account balance."  CDIA's submission, if anything, provides *support* for Pedro's willfulness claims, as TransUnion cannot claim to have been caught unawares.  What TransUnion turns around and does with that knowledge is the issue at the center of this case, and one that is not resolvable on a motion to dismiss.

## II.    ALTERNATIVELY, PEDRO ALLEGED KNOWING VIOLATIONS OF THE FCRA.

Knowing noncompliance also, of course, constitutes a willful FCRA violation.  *See Safeco*, 551 U.S. at 57; *Cushman v. Trans Union Corp.*, 115 F.3d 220, 227 (3d Cir. 1997) (explaining that a policy could constitute a willful FCRA violation if adopted "knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA").

Pedro adequately pleaded knowing violations of the FCRA.  The complaint alleges that TransUnion, through the key role it plays in the Consumer Data Industry Association, adopted the Metro 2 Guidelines, including the policy that resulted in Pedro's parents' delinquency appearing as a negative mark on her credit reports.  App. Tab 1 at ¶¶ 24-25, 28.  And, the complaint alleges, TransUnion

adopted a credit scoring model that factors in negative authorized user information, resulting in Pedro's decreased credit scores. *Id.* at ¶ 27. TransUnion adopted and maintained these policies despite well-established law requiring reasonable procedures to avoid materially misleading credit reports, and despite thousands of disputes from consumers stemming from negative inaccurate authorized user information. *Id.* at ¶ 40. It is more than plausible that TransUnion knew it was violating the FCRA, a question that can be answered only through discovery.

CDIA argues that TransUnion did not commit knowing violations because "subjective bad faith" cannot "support a willfulness finding." *Safeco*, 551 U.S. at 71 n.20. But that is only true where "the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation." *Id.* Here, as explained above, the only permissible reading of 15 U.S.C. § 1681e(b) is that it requires credit reports to be void of materially misleading information or omissions. And the complaint plainly—and plausibly—alleges materially misleading information. *Safeco* is no bar to an allegation of knowing violations of the Act.[2]

---

[2] CDIA (but not TransUnion) argues that Pedro failed to preserve the argument that TransUnion committed knowing violations of the FCRA. CDIA Br. at 19 n.5. Not so. The complaint alleged that a willful violation includes "acts known to violate the [FCRA]," App. Tab 1 at ¶ 14, and presented all of the factual allegations that constitute a plausible claim of knowing violations. *Id.* at ¶¶ 24-28, 40. The claims for relief did not distinguish between different theories of willfulness liability; nor were they required to, for plaintiffs are not obligated to plead their legal theory.

*[Footnote continued on next page]*

## III.   PEDRO HAS ARTICLE III STANDING.

TransUnion's brief includes a footnote (at 8 n.5) hinting that Pedro's claim may be barred for lack of Article III standing under *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), even though no motion to dismiss for lack of jurisdiction was filed in the District Court.  Yet, in TransUnion's Statement of Jurisdiction (at 1), TransUnion concedes that "[t]he district court has subject-matter jurisdiction[.]" Nor does its Statement of the Issue (at 1) mention standing.  This briefing tactic is borderline abusive.  TransUnion knows that the Court is obligated to ensure that it has jurisdiction, and so cannot treat TransUnion's footnote as the waiver it otherwise would be.  *See, e.g.*, *Kelliher v. Veneman*, 313 F.3d 1270, 1274 n.3 (11th Cir. 2002) (stating that because the plaintiff "only mentioned his EEOC retaliation claim in the summary of the argument in his initial brief" and "made no arguments on the merits as to this issue, the issue is deemed waived").  Yet TransUnion does not bother make a substantive standing argument, leaving Appellant and the Court to do the work for it.  The Court should not countenance such gamesmanship.

---

*See Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014).  And Pedro's opposition to Defendants' Motion to Dismiss (App. Tab 50) appropriately focused on Defendants' argument that *Safeco* precluded a finding of willfulness.  *Compare* App. Tab. 38 at 20, *with* App. Tab. 50 at 19-20.  As the claim for willfulness liability was "properly presented," Pedro "can make any argument in support of that claim; [she is] not limited to the precise arguments [she] made below." *Yee v. City of Escondido*, 503 U.S. 519, 534-35 (1992).  Her alternative arguments "are not separate *claims*," but, "rather, separate *arguments* in support of a single claim[.] *Id.*

Regardless, Pedro plainly has standing to assert her claims.

In *Spokeo*, the Supreme Court reemphasized that to have standing, a plaintiff must allege an injury-in-fact that is both (1) particularized and (2) concrete.  136 S. Ct. at 1545.  An injury is particularized if it "affect[s] the plaintiff in a personal and individual way."  *Id.* (citation omitted).  A "concrete" injury must be "de facto, that is, it must actually exist."  *Id.* at 1548.

In explaining what it means for an injury to be "concrete," the Court emphasized that injuries can be intangible as well as tangible, and "the risk of real harm" or harm that "may be difficult to prove or measure" can be concrete injuries. *Id.* at 1549.  And, the Court explained, "both history and the judgment of Congress play important roles."  *Id.*   A harm is concrete where it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit" at common law.  *Id.*  In addition, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important."  *Id.*  So "[a] plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right."  *Id.* at 1553 (Thomas, J., concurring).

Pedro alleges an injury that is both particularized and concrete.  It is particularized because her complaint alleges inaccuracies in *her* credit reports, an injury that is indisputably "personal," *Allen v. Wright*, 468 U.S. 737, 751 (1984),

and not "undifferentiated," *United States v. Richardson*, 418 U.S. 166, 176 (1974).

Her injury is concrete because an inaccurate credit report that misrepresents the

consumer's financial history—in effect, labels her as a deadbeat—creates a real

"material risk of harm" to her reputation and credit opportunities. *Spokeo*, 136 S.

Ct. at 1550. Indeed, Ms. Pedro alleged precisely such harm occurred to her in the

form of a lower credit score. App. Tab. 1, at ¶¶ 20-22. Her injury is analogous to

the publication of defamatory information, a harm long recognized at common law.

And Congress "plainly sought to curb the dissemination of false information by

adopting procedures designed to decrease that risk." *Spokeo*, 136 S. Ct. at 1550.

The harm alleged in this case is not the type of "bare procedural violation"

that *Spokeo* held would not confer standing. Pedro does not allege violation of one

of the FCRA's notice provisions, nor a trivial inaccuracy, such as "an incorrect zip

code," that "[i]t is difficult to imagine . . . could work any concrete harm." *Id*;

*Patel v. Trans Union, LLC*, No. 14-00522, 2016 WL 6143191, at *3 (N.D. Cal.

Oct. 21, 2016) (finding standing under 15 U.S.C. § 1681e(b)); *Ramirez v. Trans

Union, LLC*, No. 12-00632, 2016 WL 6070490, at *4 (N.D. Cal. Oct. 17, 2016)

(same); *Larson v. Trans Union, LLC*, No. 12-05726, 2016 WL 4367253, at *2

(N.D. Cal. Aug. 11, 2016) (same), *appeal filed*, No. 16-80111 (9th Cir.). The

reporting of derogatory information pertaining to a consumer's credit rating or

reputation falls squarely within the type of harm that was actionable at common

law and for which Congress has identified a substantive right. TransUnion's half-hearted and meritless standing challenge should be denied.

## CONCLUSION

For these reasons, Plaintiff-Appellant Kathleen Pedro respectfully requests that the judgment of the District Court be reversed.

Dated: November 21, 2016                    By:_____

                                            Jonathan D. Selbin

                                            Jonathan D. Selbin
                                            LIEFF CABRASER HEIMANN &
                                             BERNSTEIN, LLP
                                            350 Hudson Street, 8th Floor
                                            New York, NY 10013
                                            Telephone: (212) 355-9500
                                            Facsimile: (212) 355-9592
                                            jselbin@lchb.com

                                            Kenneth S. Byrd
                                            Andrew R. Kaufman
                                            LIEFF CABRASER HEIMANN &
                                             BERNSTEIN, LLP
                                            150 Fourth Avenue North,
                                             Suite 1650
                                            Nashville, TN 37219
                                            Telephone: (615) 313-9000
                                            Facsimile: (615) 313-9965

Kenneth S. Canfield
DOFFERMYRE SHIELDS
 CANFIELD & KNOWLES, LLC
1355 Peachtree Street NE,
 Suite 1900
Atlanta, GA 30309
Telephone: (404) 881-8900
Facsimile: (404) 902-3246

Matthew R. Wilson
Michael J. Boyle, Jr.
MEYER WILSON CO., LPA
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

Babak Semnar
Jared M. Hartman
SEMNAR & HARTMAN, LLP
400 S. Melrose Dr., Suite 209
Vista, CA 92081
Telephone: (951) 293-4187
Facsimile: (888) 819-8230

James A. Francis
FRANCIS & MAILMAN, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Telephone: (215) 735-8600
Facsimile: (215) 940-8000

*Attorneys for Plaintiff-
Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 6,210 words, as determined by Microsoft Word 2010, including the headings and footnotes and excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  The brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).  The text appears in 14-point Times New Roman, a proportionally spaced serif typeface.

/s/ *Andrew R. Kaufman*
Andrew R. Kaufman

## <u>CERTIFICATE OF SERVICE</u>

On November 21, 2016, I electronically filed this document through the ECF

system, which will send a notice of electronic filing to all counsel of record.

Pursuant to Eleventh Circuit Rule 31-3, I also caused seven true and correct copies

to be filed with the Court.

/s/ *Andrew R. Kaufman*
Andrew R. Kaufman